**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THOMAS K. BEGESKE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 09-cv-4009 |
| ) | |
| GENERAL TEAMSTERS UNION, LOCAL 673, ) | Judge Robert M. Dow, Jr. |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant General Teamsters Union, Local 673 ("Local 673") moves to dismiss [11] Plaintiffs' one-count complaint alleging breach of the duty of fair representation. Defendant claims that its failure to file a timely notice with Plaintiff's employer is insufficient to support Plaintiff's claim that Defendant breach its duty to fairly represent Plaintiffs. For the following reasons, Defendant's motion is denied.

**I.    Background**[1]

According to Plaintiffs' complaint, Defendant operates as a "labor organization" under the Labor Management Relations Act of 1947 ("LMRA"). Plaintiffs are employed by UChicago Argonne, LLC ("Argonne"). Pursuant to a collective bargaining agreement ("the agreement") between Local 673 and Argonne, Local 673 is the exclusive bargaining representative of Plaintiffs in their dealings with Argonne. Plaintiff Thomas Begeske, at all times relevant to Plaintiffs' complaint, was a union steward with Local 673, responsible for interacting with the union concerning labor disputes and the filing of grievances. Local 673's business agent at all

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, e.g., *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

relevant times was Javier Najera. Section 17.2 of the agreement contained a two-year wage-reopener clause which stated:

> Notwithstanding the preceding sentences in this Section 17.2, the Union or the Laboratory may reopen Appendix A for the purpose of negotiating basic hourly rates to be effective on March 9, 2009 and March 8, 2010. This Agreement will be reopened for such purpose only if either party notifies the other in writing at least sixty (60) calendar days prior to March 6, 2009 that it desires to reopen the Agreement. Failing receipt by either party of such written notice prior to said sixty days, this Agreement shall continue in full force and effect until its expiration date.

Local 637 was aware of this clause, as the union had negotiated the agreement with Argonne on behalf of its members.

Plaintiffs contend that Local 637 customarily reopened collective bargaining agreements containing wage reopener clauses. The agreement required Local 637 to notify Argonne on or before January 5, 2009, that it desired to reopen the agreement to negotiate wages. In late November or early December 2008, Plaintiffs allege that Begeske called Najera and reminded him that the time to give notice pursuant to the wage reopener clause would expire shortly. Najera allegedly told Begeske not to worry because a reminder would "pop up" automatically in the computer. In early January 2009, Begeske again reminded Najera of the notice date for the wage reopener clause, and Najera again told him not to worry. Despite these reminders and the common practice of reopening agreements, Local 637 failed to notify Argonne on or before January 5, that it desired to reopen the agreement and negotiate wages; instead, the union notified Argonne on January 14, nine days after the deadline.

On February 13, 2009, Argonne informed Defendant that Argonne would not reopen the agreement because Defendant had missed the deadline. On May 20, 2009, Argonne notified Defendant that it would have negotiated the wages in good faith if Defendant had timely requested to reopen the agreement. On previous occasions when Defendant and Argonne

negotiated wages pursuant to a wage reopener clause, Defendant's members have received between 2.6% and 3.0% raises per year. On June 9, 2009, Argonne renegotiated its contract with SEIU, a union similar to Defendant, and SEIU's members received a raise of 2.8% to 3.4% for the 2009-2010 year.

As a result of Defendant's failure to timely file a request to reopen the agreement, Plaintiffs filed a one-count complaint against Local 637 for breach of the duty of fair representation.

## II. Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (FED. R. CIV. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 129 S.Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III.   Analysis**

Congress enacted § 301 of the LMRA in order to impose "a higher level of responsibility" upon parties involved in collective bargaining agreements. *Hines v. Anchor Motor Freights, Inc.*, 424 U.S. 554, 559 (1976). Because the collective bargaining system "subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit," *Vaca v. Sipes*, 386 U.S. 171, 182 (1967), a bargaining agent has "the responsibility and duty of fair representation." *Humphrey v. Moore*, 375 U.S. 335, 342 (1964). The duty of fair representation requires a union to satisfy all members' interests without hostility or discrimination, to exercise its bargaining power in good faith and honesty, and to refrain from arbitrary conduct. *Id*. at 342.

The power that a union has to exclusively represent all employees entails "a concomitant duty of fair representation to each of its members." *Cleveland v. Porca Company,* 38 F.3d 289, 295 (7th Cir. 1994). The Supreme Court in *Air Line Pilots v. O'Neill,* 499 U.S. 65 (1991), set out a tripartite standard for determining whether this duty has been breached. "A union breaches its duty of fair representation if its actions are either arbitrary, discriminatory, or in bad faith," *Id.* at 67, and a court should look to each standard separately when determining whether a union

violated its duty. See also *Garcia v. Zenith Electronics Corp.,* 58 F.3d 1171, 1176 (7th Cir. 1995); *Rakestraw v. United Airlines,* 989 F.2d 944, 945 (7th Cir. 1993).[2]

While arbitrary conduct is a breach of a union's duty, the test for determining whether particular conduct is arbitrary can be quite forgiving. *Trnka v. Local Union No. 688,* 30 F.3d 60, 61 (7th Cir. 1994). Courts "should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Ooley v. Schwitzer,* 961 F.2d 1293, 1302 (7th Cir.), *cert. denied,* 506 U.S. 872 (1992). Thus, a union's actions are considered arbitrary only if "in light of the factual and legal landscape," these actions are "so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots,* 499 U.S. at 67. "[O]nly an egregious disregard for union members' rights constitutes a breach of the union's duty." *Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1483 (9th Cir. 1985). At least one sister circuit has noted that "[a] union acts arbitrarily by failing to take a basic and required step. Timely filing is both basic and required." *Vencel v. International Union of Operating Engineers, Local 18*, 137 F.3d 420, 426 (6th Cir. 1998).

Defendant's brief focuses on whether the "evidence" demonstrates that it breached its duty of fair representation. See, *e.g.*, Def. Mem. at 1-2 ("There is no *evidence* or even a suggestion of *evidence* that the Union acted in a hostile or arbitrary manner or showed indifference to the Plaintiffs. Rather, the *evidence* demonstrates that the Union believed that the notice would be sent in a timely manner"); Mem. at 4 ("the *evidence* actually demonstrates that

---

[2] Prior to *Air Line Pilots*, the Seventh Circuit defined the duty of fair representation very narrowly, requiring the plaintiff to prove that the union conduct was "intentional, invidious, and directed at the employee." See *Hoffman v. Lonza, Inc.,* 658 F.2d 519, 520 (7th Cir. 1981). However, in *Air Line Pilots*, the Supreme Court rejected the Seventh Circuit's narrow reading of the duty of fair representation. See 499 U.S. at 74-76. The Supreme Court determined that the union's actions must not only show "good faith and honesty of purpose," but must also be within a "wide range of reasonableness," which includes "a prohibition against 'arbitrary' conduct." *Id.* at 76; see also *Ooley v. Schwitzer,* 961 F.2d 1293, 1302 (7th Cir.), *cert. denied,* 506 U.S. 872 (1992). In its motion to dismiss, Defendant relies exclusively on the standard set forth in *Hoffman* and explicitly rejected in *Air Line Pilots*.

the individual business agent believed the computer would generate the notice * * * * There is no *evidence* that the Union acted arbitrarily * * * *); Def. Reply at 2 ("Defendant believes that the *evidence* in this case does not support a finding that it was outside the range of reasonableness"); Reply at 3 ("there is not *evidence* to show the Union was so far outside the wide range of reasonableness as to be irrational"). These arguments misconceive the purpose of a motion to dismiss, which is to test the sufficiency of the allegations, not to address issues of fact or evidence. See *Gandhi v. Sitara Capital Management, LLC*, 2010 WL 551266, at *1 (N.D. Ill. Feb. 9, 2010). Even after *Twombly* and *Iqbal*, a plaintiff does not have to come forward with evidence to survive a motion to dismiss. See *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir. 2009) (articulating the difference between a motion to dismiss and a motion for summary judgment). Instead, a plaintiff must allege sufficient factual matter which, if accepted as true, would state a claim to relief that is plausible on its face. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570.

Plaintiffs have sufficiently stated a claim against Defendant for breach of its duty of fair representation. Plaintiffs have alleged that Defendants acted both arbitrarily and egregiously in failing to adhere to the terms of the agreement and make a timely request to reopen wage negotiations. Plaintiffs also have alleged that the union steward twice notified Defendant of the impending deadline, and yet Defendant still neglected to file the notice by the deadline date. Finally, Plaintiffs have alleged that Defendant is the sole representative of Plaintiffs, that Plaintiffs rely on Defendant to negotiate their wages, and that Plaintiffs' employer would have been willing to provide a yearly raise and negotiate in good faith if not for the untimely filing. These allegations, if true, state a cause of action against Defendant for breaching its duty of fair

representation. Any consideration of evidence – as opposed to well-pleaded allegations – must come at a later stage of the case.

## III.   Conclusion

For the reasons stated above, Defendant's motion to dismiss [11] is denied.

Dated:  April 16, 2010                          _____
                                                Robert M. Dow, Jr.
                                                United States District Judge